Richard SHEPARD, Appellant,

v.

STATE of Indiana, Appellee.

No. 1178S274.

Supreme Court of Indiana.

May 7, 1980.

**2**

Dennis R. Majewski, Terre Haute, for appellant.

Theodore L. Sendak, Atty. Gen., Terry G. Duga and Richard Albert Alford, Deputy Attys. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

By way of explanation of references that will be made to the record in this opinion, we note that we are considering two consolidated appeals of Richard Shepard based on the same offenses, but involving different issues. Appellant Shepard was under eighteen years of age at the time of these offenses and was first charged in the juvenile court division of the Vigo Circuit Court with having committed acts which would be criminal if committed by an adult, to-wit: rape, robbery and burglary. The Honorable Arnold H. Brames presided over the juvenile court at that time. Judge Brames waived appellant from juvenile court to stand trial as an adult in Vigo Circuit Court. Shepard appealed this ruling to the Court of Appeals in Cause No. 1–1078 A 35. In the meantime, appellant was tried to a jury in the Vigo Circuit Court before the Honorable Hugh D. McQuillan. He was found guilty of rape, Ind.Code § 35–42–4–1 (Burns 1979 Repl.), for which he was sentenced to thirty years, and robbery, § 35–42–5–1, for which he was given a term of ten years. He then prosecuted an appeal to this Court from these two convictions. These two appeals were subsequently consolidated in this Court under Cause No. 1178 S 274, and we shall consider the issues raised in both cases.

On the evening of February 25, 1978, W. K. was in the kitchen of her home, near the back door, doing some general household chores. Her husband, E. K., was in another part of the home. The back door, which was locked at the time, was suddenly broken and forced open. Two youths, brandishing pistols, faced Mrs. K. After Mr. K. was summoned to the kitchen, the two youths tied the couple's hands and robbed them of money and personal items. One of the participants, Brian Martin, took Mr. K. upstairs, leaving Mrs. K. and appellant downstairs. Appellant Shepard then raped Mrs. K.

On his appeal from the waiver from the juvenile court, appellant claims: (1) that the findings and judgment of the juvenile court effectively shifted the burden of

proof from the State to the defendant; and (2) that the juvenile court's waiver of jurisdiction over appellant was not supported by sufficient evidence. We will first consider these issues, because an improper waiver of jurisdiction by the juvenile court would void any subsequent adult criminal action. *See, e. g. Blythe v. State,* (1978) Ind., 373 N.E.2d 1098.

## I.

■ As part of the final order waiving Shepard from juvenile jurisdiction, the trial court made fifteen findings. Number fifteen stated "that there has been no evidence to show that it would be in the best interests of said minor child to remain within the statutory juvenile system." Record of Juvenile Proceedings at 69. It is appellant's contention that this finding by the juvenile court indicated that he had shifted the burden of proof to appellant to show that it would be in his best interest to remain within the juvenile system. He interprets the law to favor disposition in the juvenile setting. He also asserts there is a presumption that it is in the best interest of the child to remain within the juvenile system, with the burden upon the State to overcome this presumption. *See, e. g., Gregory v. State,* (1979) Ind., 386 N.E.2d 675; *Atkins v. State,* (1972) 259 Ind. 596, 290 N.E.2d 441; *Gast v. State,* (1977) Ind. App., 361 N.E.2d 934. While we agree with appellant's interpretation of the law, we do not agree with his conclusion as to the effect of the juvenile court's order in this case.

The juvenile waiver statute, Ind.Code § 31–5–7–14 (Burns 1979 Supp.), provides that the juvenile judge may waive jurisdiction over a child over fourteen years of age if the court finds:

"[T]hat there is probable cause to believe that the case has specific prosecutive merit, that the child is beyond rehabilitation under the regular statutory juvenile system, that it is in the best interest of public welfare and security he stand trial as an adult, and that the act charged is either:

(1) Heinous or of an aggravated character (greater weight being given to offenses against the person than to offenses against property); or

(2) Part of a repetitive pattern of acts, even though less serious in nature."

The juvenile referee here found that appellant Shepard was fifteen years of age, that the case had prosecutive merit, and that the crimes charged were crimes against persons. Facts were presented which indicated appellant had committed acts which would constitute rape and robbery if committed by an adult. In finding number thirteen, the court found that the crimes charged were of an aggravated nature, and further that the crimes were indicative of a repetitive pattern of offenses, as shown by the previous social history entered into evidence. In finding number fourteen, the court stated:

"The court further finds that said minor child is beyond the scope of rehabilitation within the regular statutory juvenile system and that the Vigo Circuit Court Juvenile Division has exhausted its resources with respect to said minor child in that said minor has previously been disposed of, such dispositions being commitment to the H. Ralph Johnston Regional Youth Community, Indiana Boys School, Rockville Training Center, and there is testimony herein that there are no available private institutions capable of holding said minor child in custody and/or rehabilitating said minor child and, if convicted in juvenile court, probation would not be an alternative remedy for said minor child, and therefore it is in the best interest of public welfare and public security for said minor child not to remain within the regular statutory juvenile system and said minor child should be waived to Vigo Circuit Court and/or Vigo Superior Court to stand trial therein as if he were an adult."

Record of Juvenile Proceedings at 69. Clearly, the court found from the evidence presented that all of the criteria for waiver provided for in § 35–5–7–14 were present. The court made these findings based on the evidence presented. In light of all of this

**4**

evidence, finding number fifteen merely contained a statement that the court found no evidence to the contrary. When examining the total judgment of the court, finding number fifteen did not have the effect of shifting the burden of proof to appellant. *See Gregory v. State, supra.*

## II.

The court heard evidence that appellant and his accomplice, Brian Martin, had both confessed to a series of armed robberies of older people. In the course of one of the robberies, a woman received a broken hip. In another, a rape was attempted upon a seventy-five year-old woman. Appellant had previously been adjudicated a delinquent child for other offenses that would have been crimes if committed by an adult: possession of stolen property and first degree burglary. We think there was sufficient evidence before the juvenile judge to make the findings that he did and to order the appellant waived from juvenile jurisdiction to stand trial as an adult in the criminal court. We now proceed to consider the issues presented concerning his convictions in Vigo Circuit Court.

The three issues raised in the appeal from the Vigo Circuit Court concern: (1) whether the trial court erred in denying appellant's motion to suppress and allowing into evidence statements taken by police from appellant at the Vigo County Juvenile Center and at the Terre Haute Police Department; (2) whether the trial court erred in admitting into evidence photographs and testimony concerning a photograph identification procedure involving E. K., one of the victims; and (3) whether the trial court should have granted appellant's motion for a mistrial because one of the jurors indicated he knew the complaining witnesses.

## III.

On March 13, 1978, appellant was arrested and taken to the Terre Haute Police Department as a suspect in this case. Shepard's father was called by the police and came to the police station. Both Shepard and his father were given the *Miranda* warnings, in writing and orally, and Shepard agreed to waive his rights. There is no question that the advisements and waivers complied with the dictates of *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Shepard and his father were then allowed to confer privately in a separate room. Shepard's father summoned Detective Stewart, a friend of his, and asked for his advice. Stewart said the only thing he could tell him was to tell the truth. After conferring further with his son, Mr. Shepard came to the door and told police he and his son were ready to talk to them. At this point, appellant proclaimed his innocence and asserted that he did not commit these crimes. He admitted that he was with Brian Martin and John Wesley Smith, Jr., at the scene, but he claimed he did not do anything. Appellant claimed Martin and Smith were the perpetrators. The police then advised Shepard that Brian Martin had talked to them and had asserted that he had not committed the crime, but that Smith and Shepard had done so. Appellant Shepard then stated he was willing to confront Martin and wanted to do so. Martin was, at that time, detained at the juvenile detention center approximately five miles away. Appellant agreed to go there. However, appellant's father said he had to go to work and could not accompany then to the detention center. Nevertheless, he gave his permission for the police to take his son there and gave them permission to talk to him further and question him about these incidents. Appellant accompanied police to the center and talked to Martin in the presence of Martin's mother and the police. Appellant Shepard then orally admitted to the police that he did take part in the robbery with Martin, and that he did rape Mrs. K. No written statement was taken at that time.

On the following day, March 14, appellant was taken back to the Terre Haute Police Department and his father was summoned. They were advised of Shepard's *Miranda* rights, and again indicated they understood them. Shepard then waived his rights both orally and in writing. At no point during any of these statements did either appellant

or his father request an attorney. Appellant was given an opportunity to consult privately with his father before giving a statement. After he had conferred with his father for a few minutes, he informed the police that he was ready to talk to them. Appellant then gave a written and signed statement in which he fully confessed to the robbery and rape. His father was present at all pertinent times on March 14.

 Appellant contends that the incriminating statements made at the juvenile center when his father was absent were the same statements that were reduced to writing on the following day in the presence of his father. Therefore, he asserts, all of the statements must be suppressed. We disagree. It is not necessary that the parent or guardian be present at every instance in which the juvenile voluntarily talks to the police. In *Lewis v. State*, (1972) 259 Ind. 431, 439, 288 N.E.2d 138, 142, we held that a juvenile's statement cannot be used against him at trial unless he and his parents or guardian were informed of his *Miranda* rights. The juvenile must be given an opportunity to consult with his parent, guardian or attorney as to whether he wishes to preserve or waive his rights. The opportunity for such consultation regarding his rights must be meaningful and occur in the absence of neutralizing pressures which result from police presence. *Hall v. State*, (1976) 264 Ind. 448, 452, 346 N.E.2d 584, 587. A juvenile's *Miranda* rights may be waived, provided there are no elements of coercion, force or inducement present.

 There is, however, no evidence of coercion, force, or inducement here, and appellant does not claim there is. Appellant's father was present when appellant first stated that he was at the scene of the crimes but did not take part in them. This statement was made after he and his father were given the *Miranda* warnings and appellant had waived his rights. This was also after he and his father had been allowed to confer privately and had indicated they had had sufficient time to confer and were ready to talk to police. Following appellant's initial denial of the crimes, he agreed to be taken to the detention center to confront one of his accomplices. Appellant and his father both agreed that he go there without his father, indicating that he had sufficiently discussed this with his father and consulted with him as to what course he should take there. After appellant made further incriminating statements at the detention center, the police did not question him further, but waited until his father was present on the following day.

At that time, Shepard and his father were again given the *Miranda* warnings, and were given an opportunity to take advantage of them. Appellant and his father agreed that appellant would waive his *Miranda* rights. They were then offered another opportunity to talk privately. After they conferred for three to six minutes, they indicated to police that they were ready to talk to them. The interrogating officers then repeated the *Miranda* warnings and secured a waiver of appellant's rights. Appellant then voluntarily gave the written statement in question. We hold the police followed the proper procedures in taking these statements, and the trial court properly admitted the statements into evidence. *Fortson v. State*, (1979) Ind., 385 N.E.2d 429; *Buchanan v. State*, (1978) Ind., 376 N.E.2d 1131; *Yates v. State*, (1978) Ind., 372 N.E.2d 461; *Hall v. State, supra; Lewis v. State, supra.*

## IV.

 E. K., one of the victims in this case, was shown a series of six photographs, from which he positively identified appellant and his accomplice. E. K. had indicated earlier that one of the suspects, who later turned out to be appellant, was a light-complexioned black youth with no facial hair. Appellant now claims that only two of the six photographs shown to E. K. portrayed light-complexioned blacks with no facial hair, and that these two photographs were of the two co-defendants. He further complains of physical differences in those portrayed in the photographs, such as identifying plates and the height of those

appearing therein. E. K. testified at the suppression hearing that he was not aware of differences other than the facial features in the photographs. He said he looked at the facial features and recognized appellant and his co-defendant from the features he saw there.

In *Gaddis v. State*, (1977) 267 Ind. 100, 107, 368 N.E.2d 244, 249, we said: "Claims in the area of photographic displays should be evaluated in light of the totality of the surrounding circumstances and with consideration of the facts of each case." *See Deaton v. State*, (1979) Ind., 389 N.E.2d 293. Some differences can be found in any set of six photographs of persons falling within a general description. It does not appear that the differences here are any greater than might be found in any set of photographs showing six other persons. There was no suggestion made by the police here that they had a suspect in custody or that they believed that one or both of the suspects might be included in the six photographs. It does not appear that there was anything otherwise unduly suggestive about the procedures followed in the photographic display, and it further appears that witness E. K., was able to identify appellant and his cohort from his own memory, without any influence or suggestion pressuring him to do so. The trial court, therefore, properly admitted evidence of this photographic identification procedure into evidence.

### V.

During the noon recess on the first day of trial, one of the jurors informed the bailiff that, after observing Mr. and Mrs. K. on the witness stand and in the courtroom, he became aware that he had known them at one time. The bailiff reported this to the judge at the juror's request, and the juror was brought into court, out of the presence of the other jurors and in the presence of the prosecutor and appellant's counsel. The juror was then questioned about his familiarity with the victims. Approximately twenty years prior to the time of this trial, the juror attended a church which the vic-

tims attended. He said he was not closely acquainted with them and did not associate with them socially. He knew only who they were and that they had attended his church and one of the Sunday school classes. The juror further stated that he hadn't seen these people in over twenty years. Upon questioning by the court and the attorneys, he further stated that these facts would not in any way influence his opinion, and that he had an open mind and would be able to reach a verdict based on the evidence presented. The court found that the acquaintance of this juror with the prosecuting witnesses was so remote in time and so casual that it would not affect the juror's ability to serve, particularly since he indicated he had an open mind on the issue of the guilt or innocence of the defendant and would await the evidence to make his final determination.

█ In order for us to find that the trial court abused its discretion in denying Shepard's motion for a mistrial based on the revelation of this juror, we would have to find that the defendant was placed in a position of substantial peril. *Willard v. State*, (1980) Ind., 400 N.E.2d 151. Here, the juror came forward on his own and advised the court of the situation that had been created by his initial failure to recognize Mr. and Mrs. K. It appears he truthfully and openly told these facts and further assured the court he would be able to act in the proper manner in adjudging the guilt or innocence of the defendant. Particularly in light of the remoteness and casual nature of the relationship he had with the victims, it was reasonable for the court to accept this candor and give credibility to this juror's assurances that he could act impartially. The trial court did not abuse its discretion in denying appellant's motion for a mistrial. *Avery v. State*, (1978) Ind., 381 N.E.2d 1226; *Bradberry v. State*, (1977) 266 Ind. 530, 364 N.E.2d 1183; *Dewey v. State*, (1976) 264 Ind. 403, 345 N.E.2d 842.

The judgment of the juvenile court waiving appellant into adult court and the judg-

ment of conviction entered in the Vigo Circuit Court are affirmed.

All Justices concur.