Attorney for Appellant

Robert C. Perry

Indianapolis, Indiana 

Attorneys for Appellee

Pamela Carter

Attorney General of Indiana

Michael K. Ausbrook

Deputy Attorney General

Indianapolis, Indiana

IN THE

INDIANA SUPREME COURT

LORENZO BORDERS,

Appellant (Defendant below),

v.

STATE OF INDIANA,

Appellee (Plaintiff below).

)

) Supreme Court No.

) 20S00-9505-CR-513

)

) 

) 

)

)

)

APPEAL FROM THE ELKHART CIRCUIT COURT

The Honorable Gene R. Duffin, Judge

Cause No. 20C01-9402-CF-7

ON DIRECT APPEAL

SULLIVAN,  Justice.

Defendant was convicted of Murder
(footnote: 1) on November 3, 1994.  He was sentenced to a prison term of 60 years.  We affirm the conviction.

Background

On January 10, 1994, around 7:00 p.m., defendant was at the home of Angela James at the same time as Onnie Smith, the victim.  Shortly before 8:00 p.m., Smith went outside to his car and was shot to death while sitting in his car.   

The information charged both defendant and Marcus Sanders with the murder of Smith.  Sanders pled guilty to the felony murder of Smith pursuant to an agreement which stipulated that the State would not seek the death penalty against Sanders if he pled guilty and cooperated with the State in prosecuting defendant.  When called to the witness stand in defendant’s trial, Sanders testified that he would neither cooperate nor give testimony against defendant because he believed he had been misled and deceived into signing the plea agreement.  When Sanders denied knowing Smith or seeing defendant on the day of the shooting, the prosecutor, for the purpose of impeachment, questioned Sanders about his guilty plea hearing testimony.  

Other relevant facts will be provided as needed.  

Discussion

Defendant raises five contentions on appeal.  Three of these contentions attack the use of codefendant Sanders’s guilty plea hearing testimony.   The other two contentions are that the trial court committed fundamental error by admitting a tape recorded conversation in violation of defendant’s right to representation by counsel and that defendant was denied his right to a fair trial by an impartial jury.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years.  Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7); 
Buie v. State
, 633 N.E.2d 250, 252 (Ind. 1994).

I

Defendant contends that the use of  Sanders’s guilty plea hearing testimony (1) constituted a violation of defendant’s Sixth Amendment right to confront witnesses against him; (2)  was the product of prosecutorial misconduct; and (3)  would not have been admitted had defendant not been denied effective assistance of counsel.  We find in favor of the State on all three contentions.

A

Defendant argues that his right to confront witnesses against him was violated when the trial court permitted the prosecutor to read statements made by Sanders during a plea agreement hearing.  The Confrontation Clause
(footnote: 2) of the Sixth Amendment is applicable to States through the Fourteenth Amendment.  
See
 
Douglas v. Alabama
, 380 U.S. 415, 418 (1965).  “The essential purpose of the Sixth Amendment right of confrontation is to insure that the defendant has the opportunity to cross-examine the witnesses against him.”  
State v. Owings
, 622 N.E.2d 948, 950 (Ind. 1993). 

Defendant asserts that his right to confrontation was violated as a result of the following testimony elicited from Sanders on direct examination by the prosecutor:  

Q: And Mr. Sanders, you are the same Marcus Sanders who has entered a plea of guilty to the crime of Felony Murder, the Murder of Onnie Smith; is that right?

A: That’s correct.

Q: And you were charged with Felony Murder with a conspirator by the name of Lorenzo Borders, were you not?

A: True.

(R. at 561.)

. . .

Q: Now Mr. Sanders, with regard to the killing of [Smith], I have asked you       whether or not you will cooperate with me, have I not?

A: Yes.

Q: And you told me that you would not cooperate; is that correct?

A: That’s correct.

Q: And that you would not tell me about how Onnie Smith was killed; is that       right?

A: That’s correct.

(R. at 562.)

. . . 

Q: At the time you entered the plea of guilty, you indicated at that time that you would cooperate with the State of Indiana in the prosecution of   Lorenzo Borders, and you have indicated that now you will not cooperate.   Why is that, Mr. Sanders, tell me?

A: Because my plea bargain agreement under the terms understood, my lawyer, I feel I was mislead [sic] and deceived into signing the plea bargain.

Q: So as a result of your feelings that you were mislead [sic] and deceived, your feeling here is you do not want to discuss the evening that Onnie Smith was killed; is that right?

A: That’s correct.

Q: Let’s talk about that a little bit.  Did you know Onnie Smith?

A: No, I did not.

Q: Did you see him on January 10, 1994, the day that he was killed?

A: No, I did not.

Q: Do you know Lorenzo Borders?

A: Yes, I do.

Q: Did you see Lorenzo Borders on the day that Onnie Smith was killed?

A: No, I did not.

Q: So you did not see Onnie Smith, the person whom you have entered a plea of guilty to Felony Murder the day he was killed.  And you did not see Lorenzo Borders on that day too; is that you’re [sic] testimony?

A: Correct.

Q: Now, you have previously indicated in statements different to that testimony, have you not?

A: Yes, I have.

(R. at 563; 565.)

The prosecution than proceeded to impeach by reading statements which Sanders made during the plea agreement hearing.   

Defendant argues that these statements should have been deemed inadmissible because their having been read from the guilty plea hearing transcript (rather than offered through live testimony) denied him the opportunity to cross-examine the witness.
(footnote: 3)  Defendant’s claim fails for two reasons.  First, Sanders did not refuse to testify, but rather testified and was available for cross-examination.  Second, the statements which were admitted were cumulative and thus, in these circumstances, harmless.  

A-1

Defendant relies on 
Douglas
, 380 U.S. at  415, to support his claim that his Sixth Amendment right to confrontation was violated.  In 
Douglas
, when the codefendant refused to testify after invoking the privilege against self-incrimination, and the trial court granted the prosecutor the privilege of cross-examination, the prosecutor sought to refresh the codefendant’s recollection by reading the codefendant’s confession into evidence.   When the prosecutor asked the codefendant whether he made the statements, the codefendant continuously asserted the privilege and refused to answer.  The Court held that since the evidence “tended to show only that [the codefendant] made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of [codefendant] to test the truth of the statement itself.”  
Douglas
, 380 U.S. at 420.   The Court proceeded to state that the “‘inferences from a witness’ refusal to answer added critical weight to the prosecution’s case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.’”  
Id.
 (quoting 
Namet v. United States
, 373 U.S. 179, 187 (1963)).  

Defendant’s case is distinguishable from 
Douglas
.  Sanders did not invoke the Fifth Amendment and refuse to testify as did the codefendant in 
Douglas
.  He testified voluntarily on at least two occasions.  First, Sanders offered testimony — he denied being involved in the murder of Smith.  Second, when the State read the guilty plea into evidence and asked Sanders whether he made the statement, he responded in the affirmative.  In 
Douglas
, the Court stated that “effective confrontation of [codefendant] was possible only if [codefendant] affirmed the statement as his.”  
Douglas
, 380 U.S. at 420.   The 
Douglas
 test was met here.    

In any event, we find that defendant did have the opportunity to cross-examine Sanders.  The mere fact that defendant did not take advantage of the opportunity does not mean that his right was violated.  Furthermore, defendant’s claim that the entire cross-examination of Sanders consumed slightly more than one page of transcript, Br. of Appellant at 15,  does not constitute a lack of cross-examination.  In fact, our review of the record suggests to us that the refusal to cross-examine may have been trial strategy to avoid the possibility that Sanders would offer evidence damaging to the defendant.  Alternatively, if defendant felt it of value to obtain testimony from the codefendant, he could have requested the court to compel Sanders to respond to questions on cross-examination.  He did not do so.  We find that defendant’s Sixth Amendment right to confront and cross-examine witnesses against him was not violated.

A-2

Defendant’s claim that his right to confront and cross-examine witnesses against him was violated also fails because the evidence introduced through codefendant was cumulative of defendant’s and defendant’s cell mate’s statements.  It is well recognized that any error in admitting evidence will be found harmless where the evidence is merely cumulative.
(footnote: 4)  
See
 
Chappel v. State
, 591 N.E.2d 1011, 1015 (Ind. 1992).   

Following is the testimony of two witnesses who we find provided evidence similar to that provided by Sanders.  Officer Converse offered the following testimony on direct examination: 

Q: And directing your attention to January 27, 1994, I’m going to ask you   whether or not you had an occasion to have a conversation with [the   defendant]?

A: Yes, sir, I did.

(R. at 628.)

. . .

Q: And with regard to that conversation, did he tell you anything with regard to the robbery of Onnie Smith that occurred on January 10, 1994?

A: Yes sir.  The Defendant told me that he along with another subject planned to rob Onnie Smith.

Q: Did he tell you the name of the other man?

A: Yes, sir.  Marcus Sanders, sir.

Q: With regard to that conversation that you had with the Defendant, did he tell you anything about a weapon that Onnie Smith had at the time of the robbery?

A: Yes, sir.  He stated that Onnie Smith, the victim of this case was, in fact       armed.  I believe he said with a 9mm handgun; however, that particular       weapon was inoperative.  

(R. at 629.)

The following is a recitation of what occurred on direct examination of defendant’s cell mate:

Q: And did you have several conversations with Lorenzo Borders?

A: Yes, we did.

Q: And were those conversations about the crime with which Mr. Borders was       charged, Felony Murder?

A: Yes.

Q: And during those several conversations that you had with him, was anyone       else present?

A: No.

Q: Did he tell you how there [sic] happened--what happened on January 10,       1994?

A: Yes, he did.

Q: When Onnie Smith was killed?

A: Yes, he did.

Q: Tell the Court and jury what he told you?

(R. at 654.)

The witness then proceeded to give a detailed account of how defendant told him the crime took place and testified that the story was told to him quite a few times.  Because the statements of the defendant and the defendant’s cell mate as recounted by these two witnesses was essentially the same as Sanders’s guilty plea testimony, we find that the admission of the guilty plea testimony was cumulative of other evidence to the same effect.

B

Defendant claims he was denied his Fourteenth Amendment right to due process of law because the prosecutor engaged in misconduct (1) by calling a witness that the prosecutor knew would refuse to testify, (2) by using the guilty plea and prior statements as substantive evidence, and (3) by ignoring the trial court’s ruling barring questioning about the statement Sanders gave to the police.

When reviewing a claim of prosecutorial misconduct, we must determine: (1) whether there was misconduct by the prosecutor; and (2) whether that misconduct, under the circumstances, placed the defendant in a position of grave peril to which the defendant should not have been subjected.  
Kent v. State
, 675 N.E.2d 332, 335 (Ind. 1996)(citing  
Smith v. State
, 516 N.E.2d 1055, 1063 (Ind. 1987)); 
Schlomer v. State
, 580 N.E.2d 950, 956 (Ind. 1991).  The gravity of peril turns on the probable persuasive effect of the misconduct on the jury’s decision, not on the degree of impropriety of the conduct.  
Kent
, 675 N.E.2d at 335 (citing 
Bradley v. State
, 649 N.E.2d 100, 107-108 (Ind. 1995)); 
Marshall v. State
, 621 N.E.2d 308, 320 (Ind. 1993).    

B-1

We agree with defendant that it is improper for the prosecutor to call as a witness a codefendant when the prosecutor knows in advance that the witness will invoke the Fifth Amendment and refuse to testify.  
See
 
Brown v. State
, 671 N.E.2d 401, 404-405 (Ind. 1996); 
Tucker v. State
, 534 N.E.2d 1110, 1111 (Ind. 1989); 
Aubrey v. State
, 310 N.E.2d 556, 559 (Ind. 1974).  However, in part I-A, 
supra
, we found that the statements were properly admissible and that Sanders did not refuse to testify.  Therefore, we are left with the conclusion that the prosecutor did not engage in misconduct by calling Sanders to testify.

B-2

Defendant next contends that it was misconduct for the prosecutor to use Sanders’s guilty plea and prior statements as substantive evidence of the defendant’s guilt during closing argument.
(footnote: 5)  Defendant relies on 
Hunter v. State
, 578 N.E.2d 353, 356 (Ind. 1991), to support his claim that the prosecutor engaged in misconduct.  In 
Hunter
, we reiterated the long-standing principle that evidence of a conviction or guilty plea of others charged with the same offense as the defendant is not substantive evidence of the defendant’s guilt or innocence.  
See
 
Lincoln v. State
, 191 Ind. 426, 429, 133 N.E. 351, 352 (1921); 
Jefferson v. State
, 399 N.E.2d 816, 825 (Ind. Ct. App. 1980).  
See
 
also
 
United States v. Johnson
, 26 F.3d 669, 677 (7th Cir. 1994); 
United States v. Mitchell
, 1 F.3d 235, 240 (4th Cir. 1993); 
United States v. Dunn
, 841 F.2d 1026, 1030 (10th Cir. 1988); 
United States v. Edwards
, 716 F.2d 822, 825 (11th Cir. 1983). 

We first observe that during the trial Sanders’s guilty plea evidence was properly admitted for purposes of impeachment and not substantive evidence.
(footnote: 6)  
See
 
United States v. Halbert
, 640 F.2d 1000, 1004 (9th Cir. 1981)(“Admissibility of the plea turns on the purpose for which it is offered.”).  Indeed, defendant acknowledged during trial that the guilty plea hearing testimony was being used for impeachment purposes.  
See
 part I-A, 
supra
.  As such, the rule of 
Hunter
 (and 
Lincoln
) did not prevent the admission of the guilty plea evidence at trial because that rule does not prohibit the use of guilty pleas for purposes of impeachment.  
See
 
Zarnik v. State
, 172 Ind.App. 593, 601, 361 N.E.2d 202, 206 (1977). 

The use of Sanders’s guilty plea in closing argument is a different matter.  We agree with defendant that the prosecutor’s reference to Sanders guilty plea in closing argument — “if Marcus Sanders is guilty of felony murder so is” defendant — was an improper attempt to use the guilty plea as substantive evidence of defendant’s guilt.
(footnote: 7)  

However, improper statements during closing argument do not necessarily require a retrial.  
Mitchell
, 1 F.3d at 240.  As stated earlier, we must also determine whether, under the circumstances, the defendant was placed in a position of grave peril.
(footnote: 8)  
See
 
Zenthofer v. State
, 613 N.E.2d 31, 34 (Ind. 1993).  We narrowly determine that defendant was not placed in a position of grave peril since Sanders’s guilty plea hearing testimony was properly before the jury and because the prosecutor made only a brief reference to the guilty plea in the improper context (
see
 n.5, 
supra
).  
See
 
Seaton v. State
, 478 N.E.2d 51, 56-57 (Ind. 1985) (where the court found that only one reference to the guilty plea of defendant’s brother was not so prejudicial as to require reversal); 
cf.
 
Mitchell
, 1 F.3d at 241(where the prosecutor repeatedly referred to the codefendant’s conviction during cross-examination and stressed during closing argument the codefendant’s conviction and relationship to the defendant).  Our conclusion of the absence of grave peril is bolstered by the defendant’s confession being properly before the jury.
(footnote: 9) 

B-3

Finally, defendant contends that the prosecutor committed misconduct by ignoring the trial court’s ruling barring questioning about statements which Sanders made to the Elkhart police.  After the prosecutor impeached Sanders with testimony from his guilty plea hearing, the prosecutor attempted to admit into evidence statements which Sanders had previously made to the Elkhart City Police Department.
(footnote: 10)  Trial counsel objected to the admission of the police statements on the grounds that not only did the statements deny defendant his constitutional right to confront and cross-examine Sanders, but they were also an improper basis for impeachment.  The objection was sustained, but the prosecutor continued questioning Sanders thereby eliciting further testimony regarding the police statement.  

We agree with defendant that the prosecutor improperly continued questioning Sanders regarding the police statement after defendant’s objection was sustained.  However, even though the actions of the prosecutor may constitute misconduct, such actions did not result in grave peril to the defendant.  Our finding is based on the fact that the testimony elicited from the police statements was essentially the same as evidence already obtained through reading the transcript of the guilty plea hearing.  Since the evidence was merely cumulative, it is unlikely that the jury’s verdict was based on this evidence.  Therefore, we find no reversible error as a result of the prosecutor ignoring the trial court’s ruling.   

C

Defendant claims that he was denied the effective assistance of counsel to which he was entitled.  The standard of review for analyzing ineffective assistance of counsel claims is set forth in 
Strickland v. Washington
, 466 U.S. 688 (1984).  A defendant must show that the performance of counsel was deficient, which requires a demonstration that it was unreasonable under prevailing professional norms; and that he was prejudiced as a result of the deficient performance.  
Id
.  
See
 
also
 
State v. Moore
, 678 N.E.2d 1258, 1261 (Ind. 1997); 
Bannowsky v. State
, 677 N.E.2d 1032, 1034-35 (Ind. 1997); 
Cook v. State
, 675 N.E.2d 687, 692 (Ind. 1996).  There is a presumption that counsel is competent which must be rebutted by strong and convincing evidence in order to succeed on this claim.  
Fugate v. State
, 608 N.E.2d 1370, 1372 (Ind. 1993). 

Defendant contends that trial counsel’s performance was deficient when he failed to respond to Sanders’s testimony in three respects:  (1)  failing to object when it became apparent that codefendant was refusing to testify;  (2)  failing to object when the State began to read into evidence statements from the guilty plea hearing; and (3)  failing to move for a mistrial based on prosecutorial misconduct.  

Based upon our finding that the evidence was properly admitted, 
see
 part I-A, 
supra
, we find that trial counsel was not ineffective for failing to object to its admission.   As to the two instances where we found improper conduct on the part of the prosecutor (
see
 part I-B, 
supra
), we also find no ineffective assistance of counsel.  In both situations, counsel lodged proper and timely objections.  One was overruled (
see
 part I-B-2 & n.7, 
supra
); the other was sustained but the court’s ruling was ignored (
see
, part I-B-3, 
supra
).  Under such circumstances we cannot say that counsel’s performance fell below prevailing professional norms.

II

Defendant alleges that the trial court committed fundamental error and violated defendant’s right to representation by counsel by allowing into evidence testimony of a statement made by the defendant obtained by the police after the defendant had been formally charged and was represented by counsel.
(footnote: 11)  Defendant’s cell mate testified that he contacted the police after obtaining information that defendant wanted an individual named Cecil Brown both to be a defense witness and to murder a potential witness.  Subsequently, during a telephone conversation, Captain Larry Towns pretended to be Cecil Brown and tape recorded the conversation with defendant.  Defendant contends that the tape recorded conversation suggests that defendant informed Captain Towns, whom he thought to be Cecil Brown, of what he should testify to on defendant’s behalf.  This tape was admitted into evidence over defendant’s objection, which defendant now contends was fundamental error.

Fundamental error is an error which is a substantial blatant violation of basic principles rendering the trial unfair to the defendant and, thereby, depriving the defendant of fundamental due process.  
See
 
Townsend v. State
, 632 N.E.2d 727, 730 (Ind. 1994);  
Jackson v. State
, 575 N.E.2d 617, 621 (Ind. 1991).  The error must be so prejudicial to the rights of a defendant as to make a fair trial impossible.   
Winegeart v. State
, 665 N.E.2d 893, 896 (Ind. 1996)(quoting 
Barany v. State
, 658 N.E.2d 60, 64 (Ind. 1995)).  

In arguing that the trial court violated defendant’s Sixth Amendment right to representation, defendant relies on 
Maine v. Moulton
, 474 U.S. 159 (1985).  In 
Moulton
, the State recorded a conversation between defendant and a codefendant
(footnote: 12) and admitted into evidence portions of the recording.  The Supreme Court held that “the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused’s right to have counsel present in a confrontation between the accused and a state agent.”  
Id
. at 487.   The Court proceeded to state that “incriminating statements pertaining to pending charges are inadmissible at the trial of those charges. . .”  
Id
. at 489. 

   

In both 
Moulton
 and this case, the State set out to record conversations for the legitimate purpose of investigating threats against witnesses. While the facts of 
Moulton
 and this case regarding the manner in which the State obtained the recorded information are similar,  there are some significant differences relating to what was actually admitted at trial.   In 
Moulton
, the court admitted into evidence parts of the recording which involved discussion of crimes for which defendant had already been indicted.  The court also admitted portions discussing the development of false testimony, which included a recounting of the crimes.  This is significantly different than the tape recorded conversation admitted into evidence in this case; the conversation here did not include a recounting of the crime, nor were the statements incriminating.  Our conclusion that the statements were not incriminating are based on the following facts:  (1) nowhere in the transcript of the tape recorded conversation does defendant explicitly (although it arguably may be inferred) request Captain Larry Towns
(footnote: 13) to lie about what he observed; (2)  during the tape recorded conversation, defendant stated, “I think they’re trying to frame me for something”
(footnote: 14) (R. at 678, part 3.); (3) the detective testified on cross-examination that during this conversation, the defendant never asked him to go down to the police station and give a statement, (R. at 683); and (4) nothing in the conversation supports the cell mate’s accusation that defendant wanted a witness killed.  Because we find that the statements were not incriminating, the rule in 
Moulton
 does not apply.  We find there to be no fundamental error in the admission of the tape recordings.

III

Defendant asserts that he was denied his Sixth Amendment right to a fair trial by an impartial jury as a result of alleged juror misconduct.  Defendant filed a Belated Motion to Correct Error requesting that the jury verdict be set aside and that a new trial be granted.  The motion was based on an affidavit by a non-party to the effect that one of the jurors had known the victim since childhood and had attended his funeral.  Defendant appeals the denial of this motion.  

Defendant relies on 
Shepard v. State
, 404 N.E.2d 1 (Ind. 1980), to support his contention that he was placed in a position of substantial peril due to the lack of an impartial jury.  In 
Shepard
, during the trial, a juror informed the court that he realized that he knew the victim at one point in time because they attended the same church.  We found in 
Shepard
 that the relationship was so remote in time and so casual that it was unlikely to effect the juror’s ability to serve.  
Id.
 at 6.  In this case, we determine that to the extent any relationship was clearly established, the relationship was too remote and casual to find that the juror was incapable of serving impartially.  Our decision is based on several reasons.  First, there was no substantial or direct evidence that the juror was in fact not impartial or that she had a personal relationship with the victim.  Second, the affiant stated only that he believed that the juror was present at the funeral, but did not state this fact with certainty.  Third, the affiant’s claim that the juror talked with him and the victim when they were children was too attenuated for us to find that a personal relationship ever existed.  Therefore, we do not find that defendant was denied his Sixth Amendment right to a fair trial by an impartial jury.    

Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

FOOTNOTES
1:
Ind. Code § 35-42-1-1 (1993)

2:
The Confrontation Clause reads as follows:

In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . .

3:
Defendant does not contend that these statements were inadmissible hearsay.  
See
 Ind.Evidence Rule 801(d)(1)(A).

4:
See the following cases where we have held that the improper admission of evidence is not grounds for reversal where there is cumulative evidence to the same effect:  
McClain v. State
, 675 N.E.2d 329, 331 (Ind. 1996); 
Pruitt v. State
, 622 N.E.2d 469, 474 (Ind. 1993).

5:
Defendant objects to several statements made by the prosecutor during closing argument but only the following are relevant pertaining to the issue of defendant’s guilt:

You heard Marcus Sanders.  Marcus Sanders did not admit to the killing of Onnie Smith.  Yet he plead [sic] guilty to felony murder.  Why did he plead guilty to felony murder when he didn’t kill him?  Because he is responsible for the acts of the defendant, Lorenzo Borders.  Each is responsible for the acts of the other.  (R. at 759.)  

Ladies and gentlemen, if Marcus Sanders is guilty of felony murder so is he.  So is he.  They both are.  The act of one is the act of the other.  It doesn’t matter who did the shooting, the robbery plan was well established the killing of Onnie Smith clearly occurred in the course of the robbery. [sic] (R. at 800.)

     

6:
See 
United States v. Edwards
, 716 F.2d 822, 825 (11th Cir. 1983), where the court reaffirmed the standard of admitting a codefendant’s guilty plea established in 
United States v. King
, 505 F.2d 602, 607 (5th Cir. 1974):

We must carefully examine all the facts and circumstances of the case in their proper context.  The presence or absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the facts of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant’s failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt.

7:
Trial counsel did preserve this issue for appeal by making the following objection before the State began its closing argument:

Your Honor, this is meant to be a continuing objection during the course of closing arguments.  We ask that the State of Indiana be refrained from commenting with regard to that portion of the guilty plea given on March 17, 1994, by Marcus Sanders, which refers to Lorenzo Borders.  In support of that, we would argue that it is impeachment and not substantive evidence. 

The court overruled this objection.  (R. at 754-755.)

8:
See 
United States v. Mitchell
, where the court considered four factors in determining whether the prosecutor’s misconduct resulted in prejudice to the defendant:  (1)  the degree to which the prosecutor’s remarks have a tendency to mislead the jury and to prejudice the accused;  (2) whether the remarks were isolated or extensive;  (3)  absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and  (4)  whether the comments were deliberately placed before the jury to divert attention to extraneous matters.  1 F.3d 235, 241 (4th Cir. 1993)(quoting 
United States v. Harrison
, 716 F.2d 1050, 1052 (4th Cir. 1983), 
cert
. 
denied
, 466 U.S. 972 (1984)).  

9:
Although we do not find reversible error here, we emphasize that it was improper for the prosecutor to use Sanders’s guilty plea as substantive evidence of defendant’s guilt during closing argument.  At a minimum, defendant would have been entitled to a limiting instruction (even if the prosecutor had not made the improper comments during closing arguments) admonishing the jury that  evidence of the codefendant’s guilt was not evidence of the defendant’s guilt.  
See
 
Edwards
, 716 F.2d at 825 (prosecution may introduce evidence of a coindictee’s guilty plea if a proper cautionary instruction is given to the jury); 
United States v. Baez
, 703 F.2d 453, 455 (10th Cir. 1983)(“Because of the potential for prejudice, cautionary instructions limiting the jury’s use of the guilty plea to
 
permissible purposes are critical.”)  

10:
This police statement was entered of record during the guilty plea hearing.  (R. at 596.)

11:
Alternatively, defendant argues that trial counsel provided ineffective assistance by  failing to object to this evidence on the specific grounds that it was a violation of defendant’s Sixth Amendment right to representation.  Trial counsel did however make the following objections when the State attempted to introduce the tape recording into evidence:

Your Honor, we object to the tape.  First, on the ground that it involves an independent act, which doesn’t have a direct bearing on this case.  And does not involve a specific admission by this  Defendant. . . . (R. at 675.)

These objections were overruled and appeal of that ruling is not sought.  Given these objections, we cannot say that counsel’s performance fell below prevailing professional norms.

12:
The codefendant confessed to committing the crimes and informed the police of defendant’s desire to kill one of the State’s witness.  Subsequently, the State requested and the codefendant agreed to record telephone calls received from defendant.  Based on these recorded telephone conversations, police obtained knowledge of a meeting that defendant requested with codefendant to discuss the pending charges and to plan a defense strategy.

13:
Defendant is under the assumption that Captain Larry Towns is Cecil Brown.

14:
We find this statement to be exculpatory, rather than incriminating.