## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 27 2018, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marlan Long,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | December 27, 2018<br><br>Court of Appeals Case No.<br>18A-PC-1523<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br><br>The Honorable James K. Snyder, Master Commissioner<br><br>Trial Court Cause No.<br>49G20-1512-PC-45593 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Marlan Long was convicted of conspiracy to deal in cocaine, a Class A felony. He pursued an unsuccessful direct appeal and then filed a petition for post-conviction relief, which the post-conviction court denied. On appeal, Long argues that the post-conviction court erred in determining that trial counsel was not ineffective.

[2] We affirm.

## Facts & Procedural History

[3] In August 2011, officers from the Metro Drug Task Force of the Indianapolis Metropolitan Police Department (IMPD) and the Drug Enforcement Agency (DEA) arranged for a confidential informant (C.I.) to purchase a kilogram of cocaine from Vernon Woodruff. They had used the C.I. on four prior occasions that month to purchase amounts of cocaine from Woodruff in ever-increasing quantities. The "kilo buy-bust" was arranged for the purpose of identifying and arresting Woodruff's supplier, as well as Woodruff. *Trial Transcript* at 32.

[4] On August 23, 2011, a DEA agent installed a video recording device in the C.I.'s vehicle. Law enforcement, consisting of approximately fifteen IMPD officers and DEA agents, established surveillance around Woodruff's residence, and the C.I. was searched for contraband and money and was fitted with a recording device.

[5] The C.I. contacted Woodruff to arrange the purchase of a kilogram of cocaine. Woodruff then called Bryant Williams, a longtime acquaintance, to see if Williams could obtain that much cocaine. Williams told Woodruff that his cousin, whom Woodruff had never met, "could get a kilo" for him. *Id.* at 81. Woodruff arranged a meeting between the C.I. and Williams. Woodruff did this in hopes of receiving some money and cocaine for his assistance in the transaction. Woodruff's role was to arrange for the buyer to be at the meeting, and Williams's role was to arrange for the seller to be at the meeting.

[6] The C.I. arrived at Woodruff's house, parked, and stayed inside his vehicle. Woodruff came out and spoke with the C.I. for a few minutes. Woodruff asked the C.I. to come inside, but the C.I. declined. At some point, Williams arrived in a Camaro being driven by Long. Williams got out of the vehicle and was greeted by Woodruff. Williams and Woodruff went inside the residence, and Long reparked and then stayed in the Camaro.

[7] Woodruff and Williams waited inside for the cocaine to be delivered, and the C.I. waited in his vehicle. During the period of time the C.I. waited, about an hour, Woodruff came in and out of his house to negotiate and talk with the C.I. He gave the C.I. a "ballpark figure" of how much the cocaine would cost. *Id.* at 119. At one point, Woodruff brought Williams out to the C.I.'s vehicle and the three sat in the car talking for a bit. On another occasion, Williams visited Long in the Camaro briefly before heading back inside the home.

[8] Eventually, two vehicles – a Dodge Durango and a Dodge Magnum – arrived together at an adjacent commercial parking lot. A passenger in the Magnum got out and went into a liquor store. About the time that the Magnum's passenger returned a few minutes later, Long had exited the Camaro and walked that direction and threw a bottle away in a nearby dumpster. Long then walked toward the Durango. The driver of the Durango got out and talked with Long for about a minute. The passenger of the Durango, Che Brownlow, then got out carrying a small black bag that contained a kilogram of cocaine. Long and Brownlow walked back toward the Camaro, Brownlow was still carrying the bag, and Williams came out and led them into Woodruff's house. Woodruff had never met Long or Brownlow before.

[9] The events that then transpired inside the home are all according to Woodruff, who testified as a State's witness at trial after entering into a plea agreement. Brownlow placed the bag on the kitchen table. Woodruff said that the buyer would want to see and sample the cocaine before any money was transferred. Long then opened the bag, displaying the kilogram of cocaine wrapped in cellophane. Woodruff handed a utility knife to Long, and Long cut the wrapper off of the cocaine and then placed the cocaine back in the bag. Woodruff, Williams, Long, and Brownlow stood around the kitchen table. A discussion regarding the selling price ensued, with Long setting the base price and Williams and Woodruff tacking on additional amounts for their fees.

[10] About ten minutes after the arrival of Long and Brownlow, Williams and Woodruff came outside and entered the C.I.'s vehicle. Williams carried the bag

of cocaine, opened it, and showed it to the C.I. Long and Brownlow remained inside the house during the transaction. After receiving the takedown signal, law enforcement officers moved in around the C.I.'s vehicle and entered Woodruff's house. Officers also secured the Durango and Magnum, as well as their occupants. Laboratory analysis later confirmed the substance to be a kilogram of cocaine.

[11] On August 26, 2011, the State charged Long with Class A felony conspiracy to commit dealing in cocaine (Count I), Class A felony dealing in cocaine (Count II), Class C felony possession of cocaine (Count III), and Class D felony operating a motor vehicle while suspended as a habitual traffic violator (Count IV). Williams, Woodruff, and Brownlow were also charged with Counts I, II, and III. Woodruff was charged with four additional counts of Class A felony dealing and Class C felony possession for the prior drug transactions between him and the C.I.

[12] On August 14, 2012, Woodruff entered into a plea agreement with the State. He pled guilty to Count II in exchange for the dismissal of the ten other counts against him. Additionally, his sentence for the Class A felony was set at thirty years with ten of those years suspended. Woodruff agreed to truthfully testify as to what transpired on August 23, 2011. Thereafter, Williams was convicted of Counts I and II and sentenced, on November 26, 2012, to thirty years with ten of those years suspended.

[13] Long and Brownlow's joint jury trial commenced on January 30, 2013. It ended in a mistrial due to a hung jury. Just before the retrial on January 15, 2014, Brownlow pled guilty as charged. The trial court entered judgments of conviction against Brownlow on Counts I and II. That same day, Long's jury trial commenced.

[14] At trial, Woodruff testified for the State as set forth above. His testimony was the only direct evidence linking Long to the cocaine transaction. The defense theory was that Woodruff could not be believed and that Long was present, having given Williams a ride, but not involved in the drug deal. Rather, according to the defense, the evidence established the involvement of Woodruff, Williams, and Brownlow, but not that of Long.

[15] During the trial, the State introduced into evidence Exhibit 25, which was an abstract of judgment for Williams's case, showing the counts of which Williams was convicted and the sentence imposed. The State also introduced Exhibit 26, which was the CCS from Brownlow's case, showing that Brownlow had just pled guilty and was convicted of conspiracy and dealing. Long's trial counsel did not object to the admission of these exhibits.

[16] The jury found Long guilty of Count I, the conspiracy charge, but was deadlocked as to Counts II and III. The trial court entered judgment as to Count I and declared a mistrial as to the remaining counts. Following a sentencing hearing, the trial court sentenced Long to thirty years in prison. Long's conviction and sentence were affirmed by this court on direct appeal.

*Long v. State*, No. 49A02-1403-CR-200 (Ind. Ct. App. December 31, 2014), *trans. denied*.

[17] On December 14, 2015, Long filed a pro-se petition for post-conviction relief, which was amended twice by counsel in 2016 and 2017. Ultimately, Long alleged that his trial counsel was ineffective for failing to object to Exhibits 25 and 26. The post-conviction court held an evidentiary hearing on January 5, 2018, and issued its findings of fact and conclusions on May 31, 2018, denying post-conviction relief. Long now appeals. Additional information will be provided below as needed.

### Standard of Review

[18] In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* (quoting *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, *i.e.*, "that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)).

A petitioner will prevail on a claim of ineffective assistance of counsel upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner. *Id.* To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). The second element requires a showing of prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id*. at 1139. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Because a petitioner must prove both deficient performance and prejudice to prevail on a claim of ineffective assistance of counsel, the failure to prove either element defeats such a claim. *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001).

## Discussion & Decision

Long correctly observes that Exhibits 25 and 26 were objectionable. Our Supreme Court has recognized "the long-standing principle that evidence of a conviction or guilty plea of others charged with the same offense as the defendant is not substantive evidence of the defendant's guilt or innocence." *Borders v. State*, 688 N.E.2d 874, 880 (Ind. 1997); *see also Kemper v. State*, 35 N.E.3d 306, 311 (Ind. Ct. App. 2015) ("a coconspirator's plea of guilty is not

admissible as substantive evidence of the defendant's guilt"), *trans. denied*. While such evidence may be admissible for other purposes and not substantive evidence, Long's trial counsel did not seek to have the exhibits so limited and it is not even clear for what other purpose Exhibit 26 could have been used.[1] *See Borders*, 688 N.E.2d at 880.

[21] Although trial counsel could have raised a successful objection to the exhibits, counsel's testimony at the post-conviction hearing establishes that he made a strategic decision not to object. Counsel believed that the exhibits were consistent with the defense theory. That is, Woodruff, Williams, and Brownlow were involved in a drug conspiracy but Long just happened to be there.[2] Counsel explained that, unlike the other three, there was very little evidence tying Long to the cocaine deal. The State had to rely on Woodruff's testimony in this regard. Therefore, counsel "thought it was more prudent to attack [Woodruff] and his relationship with the other co-defendants." *Post-Conviction Transcript* at 13.

[22] Our standard of review requires us to presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable

---

[1] The State used Exhibit 25 to show that Woodruff and Williams received virtually the same sentence and that, therefore, Woodruff did not receive the "sweet deal" for testifying that the defense suggested. *Trial Transcript* at 349. Exhibit 26 (evidence of Brownlow's guilty plea), on the other hand, was admitted into evidence and never discussed by the State.

[2] Long acknowledges on appeal that the defense theory was "perfectly reasonable" given that "the nature and extent of Long's participation was a weak link in the State's case." *Appellant's Brief* at 22.

professional judgment. *Pennycuff v. State*, 745 N.E.2d 804, 811 (Ind. 2001). We judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct and not through the lens of hindsight. *Id*. at 811-12.

> [We] will not speculate about what may have been the most advantageous strategy in particular cases. *A deliberate choice made by counsel for some tactical or strategic reason does not establish ineffective assistance of counsel.* Moreover, the decision to forego perfunctory objections having little chance of success or no direct or substantial relationship to the main thrust of the defense is within the realm of reasonable trial strategy. The appellant must show that counsel's alleged failure to act or his choice of strategy harmed the cause.

*Id*. at 812 (citations omitted) (emphasis supplied). This is not to say that strategic decisions are beyond review. Such decisions may be deemed ineffective assistance where "egregious" and "so deficient or unreasonable as to fall outside the objective standard of reasonableness." *State v. Miller*, 771 N.E.2d 1284, 1288 (Ind. Ct. App. 2002), *trans. denied*.

[23] We agree with the post-conviction court that counsel's decision not to object to the exhibits constituted reasonable trial strategy. The exhibits established that Williams and Brownlow had been convicted of conspiracy and dealing, and the jury already knew that Woodruff had pled guilty to dealing. This evidence was in line with the defense theory that these three conspired to deal cocaine to the C.I., and their conspiracy was supported by substantial evidence other than Woodruff's own testimony. Contrary to Long's assertion, the exhibits did not

undermine the defense strategy or necessarily establish that Long was also part of the conspiracy. Long has failed to establish deficient performance by trial counsel in this respect. Accordingly, the post-conviction court properly denied relief to Long.

[24] Judgment affirmed.

Brown, J. and Tavitas, J., concur.