Vester EVANS, Appellant,

v.

STATE of Indiana, Appellee.

No. 381S83.

Supreme Court of Indiana.

Aug. 2, 1982.

Rehearing Denied Oct. 6, 1982.

M. Anne Wilcox, Ralph Ogden, J. William DuMond, Wilcox, Ogden & DuMond, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant, Vester Evans, was convicted of kidnapping, Ind.Code § 35–42–3–2 (Burns Repl. 1979), and attempted robbery, Ind.Code §§ 35–41–5–1 and 35–42–5–1 (Burns Repl. 1979), at the conclusion of a jury trial in Marion Superior Court on October 29, 1980. He was sentenced to twenty (20) years imprisonment on each count, to be served concurrently. He now appeals.

Appellant raises five errors on appeal, concerning: 1) whether the trial court committed fundamental error in failing to give final instructions on the elements of the offenses charged; 2) whether the trial court erred in denying appellant's motion for mistrial; 3) whether the State improperly examined witnesses; 4) whether the trial court erred in refusing appellant's tendered instruction No. 1; and 5) whether there was sufficient evidence to convict appellant.

On February 15, 1980, George Southworth left the People's Bank at 38th and Shadeland, in Indianapolis, Indiana, and entered his truck. He heard a noise in back of him that sounded like a gun being breeched. Looking backwards, Southworth saw a black male with a stocking pulled over his face, pointing a machine gun at him. The intruder ordered Southworth to drive east on 38th Street which he did. As he was driving along 38th Street, Southworth took his foot off the accelerator pedal to slow the truck down and then jumped out onto a grassy median strip. He injured one of his knees in doing so but was able to run to a house and call the police. Southworth was later told that his truck had been located on Penway and the police were holding appellant at the scene. Inside the truck there was a machine gun, a towel, a stocking, and a hat.

Shortly after Southworth had exited his truck, police officer Paul Jones observed the truck make an illegal left turn off Franklin Road and gave chase. Officer Jones had no knowledge of the activities described above. During the chase the driver jumped out of the truck while it was still moving and the truck ran into a fence and stopped there.

The driver ran between some houses and Jones immediately began to pursue him. He chased him around some of the houses and lost sight of him for a short time. At this time, Jones had received a radio message from police headquarters advising him of the attempted robbery and kidnapping by appellant. As officer Jones came around a corner of a house in the direction in which he thought appellant had run, he saw a Mr. Heman and asked him if he had seen a black person running through the neighborhood. Mr. Heman stated that he had seen the person and had seen him enter a white truck that was parked nearby. Officer Jones approached the white truck and found the defendant sitting on the floor of the truck with his head against the glove box, facing backward in the cab, "looking up at me." During the chase, Officer Jones found a heel from a man's shoe. When he apprehended defendant, a heel was missing from one of his shoes.

I

Appellant contends that the trial court committed fundamental error in failing to give final instructions on the elements of kidnapping and attempted robbery. Appellant admits that he raised no objections to the trial court's final instructions, he did not request an instruction on the elements of the offenses charged or on any lesser offenses, that after the jury was sworn to try the cause the court did, in its preliminary instructions, inform the jury fully as to the charges of kidnapping and attempted robbery, including the essential elements of these crimes and the statutes defining kidnapping and attempt. Appellant also admits the court offered to re-read the preliminary instructions to the jury and defendant expressly waived the re-reading of the preliminary instructions and further admits that he did not raise this question in his Motion to Correct Errors. He raises this question for the first time in this appeal, claiming that even though he did not raise the question in any of the ways set out above, the error was so fundamental that it requires a reversal of his conviction.

We have held that for an error "[t]o be categorized as fundamental error and thus to transcend our procedural requirements, the error must be blatant, and the potential for harm must be substantial and appear clearly and prospectively." *Nelson v. State*, (1980) Ind., 409 N.E.2d 637, 638. Further, "the error complained of must be such, that if not rectified, would deny the defendant fundamental due process." *Johnson v. State*, (1979) Ind., 390 N.E.2d 1005, 1010.

We stated in *Crosson v. State*, (1980) Ind., 410 N.E.2d 1194, 1195:

"Any alleged error presented to us without a specific objection at trial may be considered only if it was so fundamental that it denied petitioner a fair trial. *Malo v. State*, (1977) 266 Ind. 157, 361 N.E.2d 1201. That the error complained of relates to the violation of a right guaranteed by the constitution does not, in and of itself, render it fundamental error requiring us to go against well established rules of procedure. Rather, fundamental error is error which, if not rectified, would deny the defendant "fundamental due process." *Malo v. State, supra; Webb v. State*, (1972) 259 Ind. 101, 284 N.E.2d 812."

Appellant directs us to *Screws v. United States*, (1945) 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed.2d 1495, where the United States Supreme Court stated:

"And where the error is so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it necessary to take note of it on our own motion. Even those guilty of the most heinous offenses are entitled to a fair trial. Whatever the degree of guilt, those charged with a federal crime are entitled to be tried by the standards of guilt which Congress has prescribed."

*Id.* at 107, 65 S.Ct. at 1038, 89 L.Ed.2d at 1506.

■ There was not a total failure to give the instructions about the elements of the offenses. The preliminary instructions informed the jury about the requirements for a conviction of kidnapping and attempted robbery, and the court offered to re-read the preliminary instructions as a part of the final instructions but appellant expressly agreed it would not be necessary to do so. The jury heard the very matters the appellant now complains of, albeit it was before hearing the evidence rather than after it. The order in which the jury hears these items is not of sufficient importance to raise a question of fundamental due process as appellant has alleged here. Since appellant had an opportunity to have the preliminary instructions re-read, or to tender his own instructions covering the requested areas, he failed to preserve any error the court might have committed and has especially waived the issue before us when he failed to raise the issue in his Motion to Correct Errors.

## II

Prior to trial, a motion to suppress the identification of appellant by the victim, Mr. Southworth, was granted because of suggestive procedures used in having the victim originally identify appellant. During the trial, Mr. Southworth took the stand and testified about the events surrounding the kidnapping and attempted robbery. Southworth stated that after he called the police and received some medical attention for his injured knee, the police took him to his truck, which had been found on Penway. The prosecutor asked Mr. Southworth whether the police were holding anyone in custody near the truck. Defense objected to this question but after discussion with the bench the court permitted the following:

"Q. Do you see the person in the courtroom that the police were holding in custody that date?

A. I do.

Q. And would you point to him please?

A. The defendant, Vester Evans."

Appellant moved for a mistrial on the theory that the granting of the motion to suppress barred any testimony concerning his identification and that this testimony was in violation of that order because it was

intended to and did circumvent the suppression order by giving the jury the impression that Southworth was identifying the appellant as his assailant.

■ In order for this Court to find that the trial court abused its discretion in denying defendant's motion for a mistrial, we would have to find that the defendant was placed in a position of substantial peril. *Dooley v. State*, (1981) Ind., 428 N.E.2d 1, 5; *Shepard v. State*, (1980) Ind., 404 N.E.2d 1, 6; *Willard v. State*, (1980) Ind., 400 N.E.2d 151, 158.

■ Southworth testified in detail about his kidnapping, describing his assailant as a black male with a stocking pulled over his face and wearing a black jacket, but at no time did he identify Vester Evans as the one who kidnapped him. The court indicated that the question did not ask the witness to identify his assailant but only to state that this man was in custody when he arrived at the scene of his wrecked truck. Two police officers also testified that the appellant was present near Southworth's truck when Southworth was brought to the scene. It appears, therefore, the court correctly held that the witness was testifying only as to the scene he viewed when he arrived at his truck where the police had appellant in custody and did not in any way attempt to identify the appellant as the one who held the gun on him in the truck. There was no ground for mistrial.

### III

Appellant claims that the trial court committed three evidentiary errors, the cumulative effect of which was to deny appellant a fair trial. He claims the trial court, over objection: allowed the State to ask questions of Police Officer Raimondi, on redirect examination, that went beyond the scope of cross-examination; the trial court permitted the State to ask leading questions throughout the trial; and the State was argumentative with appellant when he was being cross-examined.

■ The trial court is vested with broad discretion in conducting a trial. We held in *Maynard v. State*, (1971) 257 Ind. 336, 342, 274 N.E.2d 396, 400, that the trial court, not this Court, is in a better position to determine whether conduct of counsel conforms to the rules of propriety, and where there is misconduct, to determine whether it is harmful to the complaining party. It is also well settled that the scope and extent of cross and redirect examination is a matter within the trial court's discretion and we will not disturb the court's ruling absent an abuse of discretion. *Dooley v. State*, (1981) Ind., 428 N.E.2d 1, 6; *Woodford v. State*, (1980) Ind., 405 N.E.2d 522, 524.

■ Appellant does not set out each incident of alleged error but rather states generally the presence of these three problems in the record. Reference to the record shows that when the appellant objected to leading questions, the court sustained the objections and required the State to ask questions properly. On redirect, the trial court indicated that even though some questions tended to be repetitious, they were within the proper scope of redirect examination of the witness. These questions had to do with the location of the gun in Southworth's truck, which the witness, a police officer, had previously testified about. When the prosecutor was cross-examining appellant, he asked him about statements he had made about losing the heel from his shoe. Appellant had stated the heel fell off and in frustration he had just thrown it between the houses. There was a discussion between the prosecutor and the appellant as to how far and in what direction he threw it. There was also discussion about whether appellant caught his heel on a sewer cover or drain cover. Defense counsel objected to the manner of questioning, claiming that it was becoming argumentative. The trial court indicated this was cross-examination but also indicated the questions were straying from the main point. These incidents point out nothing more than the normal problems that arise in examining witnesses in a trial. They certainly do not show either separately or cumulatively that the court abused its discretion in its management of the trial or

in controlling the introduction of testimony. We find no reversible error in any of the questions raised by appellant on this issue.

## IV

■ Appellant's tendered instruction No. I was on the subject of circumstantial evidence. The court refused appellant's tendered instruction I but gave its own final instruction 8 that covered all of the features of circumstantial evidence covered in tendered instruction No. I, plus a more complete and detailed instruction on circumstantial evidence. The court very clearly and thoroughly instructed the jury on circumstantial evidence including the statement that where the evidence necessary to support a conviction is entirely circumstantial in character "it must be of such conclusive and persuasive force that it tends to point surely and unerringly to the guilt of the accused to an extent that excludes every reasonable hypothesis of innocence." Since the court fully instructed the jury on the subject, there was no error in refusing to give the appellant's tendered instruction. *Thomas v. State*, (1981) Ind., 420 N.E.2d 1216, 1218; *Gregory v. State*, (1980) Ind., 412 N.E.2d 744, 748.

## V

Finally, appellant contends that there was not sufficient evidence introduced to convict him of kidnapping and attempted robbery. He bases his claim on the fact that Southworth was unable to give testimony as to his identification and that Officer Jones had lost sight of him at one point in the pursuit and had not seen him clearly enough prior to the time he was apprehended to actually identify him as the same person who left the truck and was later apprehended by Officer Jones.

Our rule in reviewing sufficiency of the evidence is clearly set out in *Sloan v. State*, (1980) Ind., 408 N.E.2d 1264, 1265:

"As we have explained countless times, when we review a question of sufficiency, we will look only to the evidence which supports the jury's verdict, and the reasonable inferences to be drawn there-

from. *E.g., Goodpaster v. State*, (1980) Ind., 402 N.E.2d 1239, 1242; *Stanley v. State*, (1980) Ind., 401 N.E.2d 689, 693; *Ruetz v. State*, (1978) 268 Ind. 42, 373 N.E.2d 152, 156. The purpose of this examination is to determine if there is substantial evidence of probative value from which the jury could have found Sloan guilty beyond a reasonable doubt. *Id.* Further, it is the jury's function to judge the credibility of witnesses, *e.g., Love v. State*, (1979) Ind., 393 N.E.2d 178, 180; *Taggart v. State*, (1979) Ind., 390 N.E.2d 657, 659, and the jury may believe whomever it wishes, *e.g., Riggenbach v. State*, (1979) Ind., 397 N.E.2d 953, 956; *Sypniewski v. State*, (1977) 267 Ind. 224, 368 N.E.2d 1359."

The evidence showed that Officer Jones observed the person driving Southworth's truck leave the truck and run toward the houses. He immediately gave chase. During the chase he found a heel from a man's shoe lying in the path the runner had taken and picked it up. He lost sight of the man he was pursuing between the houses but was told by a bystander that a man had come running through the area and was inside a white pickup truck sitting behind the home of Tim Rickey. Jones pulled his gun and approached the truck. Appellant was on the floor of the truck where he could not be seen by anyone approaching the truck and looking directly into it. Officer Jones said that the appellant met the description of the man running from Southworth's truck and running between the houses as he observed him. Descriptions of general appearance and clothing worn by the assailant of Southworth and the officer matched those worn by defendant although there was some conflict in the testimony. Southworth said his assailant had been wearing what appeared to be a black water-repellent jacket and when appellant was arrested he was wearing a dark brown jacket.

■ Appellant testified in his own behalf and stated he was in the neighborhood looking for an old friend he used to work with and thought he lived in that area. He said

when he could not find him he thought this pickup truck belonged to him and he was going to sit in it and wait for his friend to return home. Appellant was unknown to anyone in the neighborhood, including the owner of the white truck and the man he said he was seeking did not live in the neighborhood and none of the neighbors had ever heard of him. The jury heard all of the witnesses testify and arrived at their verdict based on the credibility they assigned to all of the witnesses including the appellant. There was ample evidence from which the jury could reasonably find that appellant was, beyond a reasonable doubt, the man who perpetrated the crimes against Southworth.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.