Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2013, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ALICE B. BLEVINS**
**ETHAN G. BARTANEN**
Bartanen Law Office, LLC.
Salem, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN AARON SHOULTZ III, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 36A01-1301-CR-9 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE JACKSON CIRCUIT COURT
The Honorable William E. Vance, Judge
Cause No. 36C01-1007-FA-10

**December 9, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

John Aaron Shoultz III ("Shoultz") was convicted in Jackson Circuit Court of two counts of Class A felony conspiracy to commit murder and was sentenced to forty years in the Department of Correction. Shoultz appeals and presents four issues, which we restate as:

I.      Whether the trial court abused its discretion in admitting evidence of Shoultz's pending murder charge;

II.     Whether the trial court abused its discretion in admitting evidence of Shoultz's white supremacy affiliations and sentiments;

III.    Whether the trial court erred in replaying State's Exhibit 14, a video recording, following the correction of technical problems;

IV.     Whether the State presented sufficient evidence to support Shoultz's conviction; and

V.      Whether Shoultz's sentence is inappropriate.

We affirm.

**Facts and Procedural History**

In May 2009, the State charged Shoultz with the murder of his father.[1] Deputy Prosecuting Attorney Amy Marie Travis ("Travis") represented the State in that case and attorney John Roche ("Roche") represented Shoultz. In July 2009, at a pretrial conference with Roche, Travis extended to Shoultz a plea offer in which he would plead guilty to murder and receive a sixty-year sentence with five years suspended. Roche wrote a letter to Shoultz, who was incarcerated at the time, detailing the plea offer. Roche later met with Shoultz at the Jackson County Jail, where Shoultz was being held on the murder charge, to discuss the merits of Shoultz's case and the terms of the plea offer.

---

[1] Shoultz was convicted of the murder in 2012 and a panel of this court affirmed his conviction in 2013. See Shoultz v. State, 995 N.E.2d 647 (Ind. Ct. App. 2013).

2

In November 2009, Shoultz began to speak with fellow inmate Michael Luttrull ("Luttrull") several times a day, primarily about legal issues related to Shoultz's pending criminal case. Luttrull, who was incarcerated on theft and failure to return to lawful detention charges, was housed in the same cellblock as Shoultz and was known as a "jailhouse lawyer," since he had worked in the jail's law library. During Shoultz's conversations with Luttrull, Shoultz repeatedly expressed hostility toward both Travis and Roche. Shoultz discussed with Luttrull his anger regarding Travis's plea offer, Shoultz's desire to harm Travis, and his inclination to send bombs in the mail to Travis, to Roche, and to Aaron Rollins ("Rollins"), the current boyfriend of Shoultz's former girlfriend. Shoultz also discussed with Luttrull his plan to send a bomb to the courthouse in order to destroy evidence related to his pending murder charge.

On January 6, 2010, Luttrull wrote to Deputy Prosecuting Attorney Jeffrey Chalfant describing his conversations with Shoultz. Luttrull attached a letter that Shoultz, who could not read or write, had dictated to Luttrull. The letter was to be sent to Shoultz's cousin, Eric Benge ("Benge"). In the letter, Shoultz declared that he wished to "beat that f**king prosecutor's ass" and inquiring if Eric still had the "SKS."[2] Appellant's App. pp. 54-55. Shoultz also stated, in the letter, that he could "beat [her] ass with that from a long ways especially if [Benge] still [has] that scope on it." Id. Shoultz included Travis's name and asked that Benge find out where Travis lived and the type of car she drove. Id.

After Shoultz finished dictating the letter to Luttrull, Luttrull crumpled it and threw it into the toilet in the cell, telling Shoultz that he would rewrite it because of the original's

---

[2] An SKS is a type of rifle.

3

sloppiness. Luttrull then rewrote the letter and gave the rewritten copy to Shoultz. Luttrull watched Shoultz place the rewritten letter into an envelope and slide it under a door into the adjacent cellblock. Luttrull later retrieved the original letter from the toilet and forwarded it to the prosecutor's office. Luttrull continued to have conversations with Shoultz and sent six or seven subsequent letters regarding those meetings. Luttrull included with these letters a suggested plea agreement calling for his release from the Department of Correction.

The prosecutor's office forwarded Luttrull's letters to the Jackson County sheriff's department. The sheriff's department interviewed Luttrull on January 4, 2010 and again on February 18, 2010. During the latter meeting, Luttrull agreed to record a conversation with Shoultz to corroborate the information he had been providing in his letters. The sheriff's department prepared his person with hidden audio and video recording equipment. Luttrull returned to the jail cellblock the same day and announced to Shoultz and his other cellblockmates that he was about to be released. Shortly after Luttrull made this announcement, Shoultz came to Luttrull's cell, closed the door, and proceeded to draw a diagram for Luttrull illustrating how to build a pipe bomb. Shoultz told Luttrull that the pipe bombs were to be sent to the offices of Travis and Roche. Shoultz also provided Luttrull with Rollins's address and instructed that a pipe bomb be sent to Rollins as well. All of these interactions were recorded by the hidden recording devices attached to Luttrull. Luttrull was subsequently released from the Jackson County Jail.

On July 28, 2010, the State charged Shoultz with two counts of Class A felony conspiracy to commit murder. On October 19, 2012, Shoultz filed a motion in limine to restrict the State's use of evidence related to Shoultz's white supremacy sentiments. The trial

4

court denied the motion in limine. A jury trial was held from October 22, 2012 to October 23, 2012. The jury found Shoultz to be guilty on both charges. On December 20, 2012, after a sentencing hearing, the trial court sentenced Shoultz to forty years on each count, to be served concurrently as to those convictions, but consecutive to the sentence entered for Shoultz's prior murder conviction. Shoultz now appeals.

**Discussion and Decision**

**I. Admission of Evidence**

Questions regarding the admission of evidence are left to the sound discretion of the trial court, and on appeal, we review the court's decision only for an abuse of that discretion. Wells v. State, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), trans. denied. The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. Id. Our review of rulings on the admissibility of evidence is essentially the same regardless of whether the challenge is made through a pretrial motion to suppress or by an objection at trial. Jackson v. State, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). We will not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. Id. However, we also consider any undisputed evidence that is favorable to the defendant. Id. Additionally, we may consider foundational evidence introduced at trial in conjunction with any evidence from a suppression hearing that is not in direct conflict with the trial evidence. Kelley v. State, 825 N.E.2d 420, 427 (Ind. Ct. App. 2005).

A) *Admission of Prior Bad Acts and Plea Offer Evidence*

Shoultz argues that the trial court abused its discretion when it admitted evidence related to his prior bad acts. Specifically, he argues that it was improper for the trial court to admit evidence that, at the time of the conspiracies, he was incarcerated because of a pending murder charge and evidence related to the plea agreement Shoultz was offered by Travis. He argues that the admission of the evidence "prevented [him] from having an impartial trial." Appellant's Br. at 11-12.

Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive . . .." The State may offer evidence of motive "to prove that the act was committed," "the identity of the actor," or "the requisite mental state." Embry v. State, 923 N.E.2d 1, 9 (Ind. Ct. App. 2010) (internal quotation marks and citations omitted). As long as the "evidence has some purpose besides [establishing] behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence." Whatley v. State, 908 N.E.2d 276, 281 (Ind. Ct. App. 2009).

"In assessing the admissibility of Rule 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403." Vermillion v. State, 978 N.E.2d 459, 463 (Ind. Ct. App. 2012) (citing Embry, 923 N.E.2d at 8). Under Indiana Evidence Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . .."

6

Shoultz asserts that the trial court abused its discretion when it allowed (1) the State to note Shoultz's pending murder charge during its opening statement, (2) Travis's testimony that she was the deputy prosecutor assigned to handle Shoultz's murder case, (3) John Roche's testimony that he represented Shoultz in the murder case, and (4) testimony regarding the terms of the plea deal Travis had offered to Shoultz in his prior murder case. Shoultz concedes that the "evidence was introduced to prove [his] motive," but claims that "the State could have effectively and adequately presented their case without discussing that the Appellant was accused of murder or that he received a plea offer of sixty years." Appellant's Br. at 12-13.

First, we note that a party's failure to object at trial results in waiver, unless error is fundamental, i.e. "a blatant violation of basic principles rendering the trial unfair." Davis v. State, 835 N.E.2d 1102, 1107 (Ind. Ct. App. 2005), trans. denied. At trial, Shoultz did not object to any of the statements he references above. Accordingly, Shoultz has failed to properly preserve this issue for appeal and has waived this argument.

Waiver notwithstanding, Shoultz's claim of error fails. Shoultz was charged with conspiracy to murder the deputy prosecutor assigned to his prior criminal case and conspiracy to murder his defense attorney in that case. Therefore, the evidence that Shoultz was charged with murder and the terms of his plea offer in that case were not offered for the improper purpose of proving that Shoultz acted in conformity with a propensity to commit murder. Rather, the evidence was highly probative, and perhaps even essential, to prove Shoultz's motive for conspiring to commit murder. Evidence of the severity of Shoultz's pending criminal charge provided for the jury the necessary context in which to view the strength of Shoultz's intent to harm Travis and Roche and the depth of his desire to avoid a trial and

7

conviction in his murder case. See Herrera v. State, 710 N.E.2d 931 (Ind. Ct. App. 1999) (holding that probative value of evidence that defendant had been imprisoned on murder charge at time he was alleged to have offered another inmate $5,000 to kill witnesses against him in his pending trial was not substantially outweighed by risk of unfair prejudice, and trial court did not abuse its discretion in admitting the evidence despite having previously granted defendant's motion in limine seeking to preclude evidence related to the specific charge).

Therefore, we conclude that, waiver notwithstanding, the probative value of the evidence in question was not substantially outweighed by the prejudicial effect. For all these reasons, we defer to the trial court's decision to admit the evidence that Shoultz had been incarcerated on a charge of murder and the evidence of the terms of Travis's plea offer to Shoultz.

B) *Admission of Evidence Related to Shoultz's White Supremacist Beliefs*

Shoultz next claims that the trial court abused its discretion when it admitted the letter that Shoultz dictated to Luttrull without first striking references to "white power" and to violence against African-Americans. Appellant's App. p. 54. The letter also featured two drawings of swastikas. Shoultz further argues that the trial court erred when it allowed testimony by Luttrull regarding Shoultz's membership in a white supremacist organization. Shoultz asserts that this evidence has low probative value because it is "in no way related to the plot or substance of the conspiracy" since the targets of his plot were not members of a minority group. Appellant's Br. at 16. He claims that the evidence is unfairly prejudicial and that "[t]he strength of the likely gut responses of the jury, coupled with the lack of probative

8

value, and the failure to exhibit a strong connection between this act and the death of the victim, should have rendered this testimony inadmissible." Appellant's Br. at 19.

Indiana Evidence Rules 401 through 403 govern relevancy of evidence. Relevant evidence is admissible; irrelevant evidence is not. Ind. Evidence Rule 402. Evidence is relevant if it has any tendency to make any "fact that is of consequence to the determination" of the action more or less probable. Ind. Evidence Rule 401. Relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Ind. Evidence Rule 403. "All evidence that is relevant to a criminal prosecution is inherently prejudicial, and thus the Evidence Rule 403 inquiry boils down to a balance of the probative value of the proffered evidence against the likely unfair prejudicial impact of that evidence." Duvall v. State, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012) (citing Carter v. State, 766 N.E.2d 377, 382 (Ind. 2002)).

In this case, we are unable to say that the trial court abused its discretion in admitting the evidence containing references to Shoultz's white supremacist beliefs. Shoultz opened the door to Luttrull's testimony regarding Shoultz's affiliation with white supremacist groups when, on cross-examination, Shoultz challenged Luttrull's testimony that Shoultz was surprisingly willing to involve Luttrull with his plot after knowing Luttrull for only a short time. When, on redirect, the State elicited testimony from Luttrull that he had once shared a jail cell with a member of the same white supremacist group of which Shoultz was a member, it did so to counter the impression Shoultz tried to create that Shoultz would not have trusted Luttrull to be part of his conspiracy.

9

Furthermore, the trial court did not abuse its discretion in admitting in its entirety, over defense counsel's objection, the letter containing references to Shoultz's white supremacist beliefs. The content of the letter was highly probative to the issue of Shoultz's intent to murder Travis, Roche, and Rollins.

Shoultz argues that the white supremacist statements should have been stricken from the letter before the letter was presented to the jury. He claims that the evidence was "highly inflammatory" and likely to "play on [the jury's] prejudices and preconceived notions of white supremacists." Appellant's Br. at 17. We disagree. The letter containing the white supremacist language was admitted only after Luttrull had already testified about Shoultz's affiliation with a violent white supremacist group without objection. Thus, the white supremacist language in the letter did not cause unfair prejudice against Shoultz since the jury had already learned of Shoultz's white supremacist beliefs. See Bryant v. State, 984 N.E.2d 240, 249 (Ind. Ct. App. 2013) trans. denied (holding that admission of recorded telephone call that depicted defendant as a racist with a criminal history and violent propensity was not an abuse of discretion where other testimony at trial had already established that defendant referred to himself as an Aryan, so the jury had already heard evidence that defendant may have had racist beliefs).

Under these facts and circumstances, we conclude that the trial court did not abuse its discretion in admitting evidence related to Shoultz's white supremacist sympathies and affiliations.

C) *Replaying of Video Recording*

Shoultz argues that the trial court erred when, after encountering technical difficulties when attempting to play State's Exhibit 13, the video recording of Luttrull's conversation with Shoultz, the trial court restarted the videotape after the technical problems had been corrected.

A trial court has broad discretion in directing the way a trial is conducted and the way evidence is presented. Evid. R. 611; Evans v. State, 438 N.E.2d 261, 264 (Ind. 1982). Here, the record indicates that, during the initial attempt to play the video, the jury saw only the beginning of the video. Shoultz does not appear in the video for several minutes. The court noted for the record the problem with playback and also noted that, during the initial playing of the video, it "could not understand anything that the audio was representing." Tr. p. 202. Therefore, we conclude that Shoultz was not unfairly prejudiced when the trial court restarted the video after encountering technical difficulties. See Hampton v. State, 526 N.E.2d 1154, 1156 (Ind. 1988) (holding that replaying a recording upon jury's request does not give undue weight to that evidence).

## II. Sufficiency of Evidence

Shoultz next argues that the State failed to present sufficient evidence to support his Class A felony conspiracy to commit murder conviction. Upon a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005)), trans. denied. Rather, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt,

then the verdict will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

To convict Shoultz of conspiracy to commit murder, the State had to prove that, while having the intent to commit murder, Shoultz entered into an agreement to commit murder and he performed an overt act in furtherance of the agreement. Ind. Code § 35-41-5-2; Dickenson v. State, 835 N.E.2d 542, 549 (Ind. Ct. App. 2005), trans. denied. Conspiracy to commit murder requires proof of an agreement, but not necessarily of a killing. Smith v. State, 655 N.E.2d 532, 546 (Ind. Ct. App. 1995), trans. denied. Shoultz argues that the State's evidence does not show that he possessed the requisite intent, pointing to Benge's testimony that Benge had no knowledge of the plot to murder Travis, Roche, and Rollins.

The evidence favorable to the conviction demonstrates that Shoultz committed an overt act in furtherance of the conspiracy to commit murder when he engaged Luttrull in discussions, one of which was videotaped, about Shoultz's plot to murder Travis, Roche, and Rollins. Shoultz dictated a letter to Benge referencing Benge's SKS rifle and its scope and asking Benge to find out where Travis lived and the type of car she drove. Shoultz told Luttrull that he wanted to have bombs mailed to Travis's and Roche's offices and to Rollins's home. Shoultz also drew a diagram, while being recorded on video, of the bombs for Luttrull and then provided Luttrull with Rollins's home address. This evidence is sufficient to establish that Shoultz conspired to commit murder. Shoultz's arguments to the contrary are simply a request that we reweigh the evidence, which we will not do. See McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005).

For all of these reasons, the evidence presented at trial was sufficient to support Shoultz's conviction for conspiracy to commit murder.

### III.    Inappropriate Sentence

Shoultz next appears to argue that his sentence is inappropriate in light of the nature of the crime and the character of the offender.  Under Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Although we may review and revise a sentence, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case."  Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).  We must give "deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions."  Trainor v. State, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), trans. denied (quoting Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)) (internal quotation marks omitted).

When we review the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  Cardwell, 895 N.E.2d at 1224.  The defendant has the "burden to persuade us that the sentence imposed by the trial court is inappropriate."  Shell v. State, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010).

Shoultz argues that because he had only one prior adult conviction and had complied with the terms of his probation, including completing anger management classes, his sentence was inappropriate. Shoultz argues that the trial court improperly considered crimes, specifically, murder, for which Shoultz had, at the time, been charged but had not yet been convicted. Shoultz also argues that the trial court erred in ordering him to serve a sentence that exceeds the advisory sentence by ten years.

We first note that Shoultz neither provides a statement of the appropriate standard of review nor points to any legal authority to support his arguments. Therefore, pursuant to Indiana Appellate Rule 46(A)(8), Shoultz has waived this issue for review. See Jackson v. State, 758 N.E.2d 1030, 1037 (Ind. Ct. App. 2001) (noting that failure to comply with Indiana Code Appellate Rule 46(A)(8)(b), which requires that an appellant's brief include a statement of the applicable standard of review for each issue, results in waiver of that issue for appellate review); see also Hollowell v. State, 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999) (providing that failure to support each contention with citation to relevant legal authority results in waiver of that issue on appeal).

Waiver notwithstanding, Shoultz's claim still fails. Shoultz plotted to bring about the violent murders of a deputy prosecutor, Shoultz's own defense attorney, and an innocent third party. The means of carrying out the intended crimes, mailing pipe bombs to a law office and the county courthouse, would, if successful, have likely caused the injury or death of many other innocent people. Furthermore, Shoultz's criminal history includes a number of violent incidents ranging from assault to the murder of his father.

We disagree with Shoultz's argument that the trial court erred when it considered crimes with which he had been charged but not convicted. Indeed, trial courts have discretion to consider crimes that have not even been charged as part of a defendant's criminal history. See Willoughby v. State, 552 N.E.2d 462, 470 (Ind. 1990). Shoultz's claim that the trial court erred when it ordered him to serve a sentence that exceeds by ten years the advisory sentence is also without merit. See Sanchez v. State, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008) (holding that sentence of 40 years for felony dealing in cocaine, which exceeded advisory sentence of 30 years, was not inappropriate in light of nature of offense and defendant's character, despite mitigating factors of defendant's lack of criminal history and guilty plea.). For all of these reasons, we conclude that Shoultz's sentence is not inappropriate in light of the nature of the offense and the character of the offender.

**Conclusion**

The trial court did not abuse its discretion in admitting evidence related to Shoultz's incarceration and the terms of his previous plea offer, nor did it abuse its discretion in the admission of evidence and testimony regarding Shoultz's white supremacist sentiments. The State presented sufficient evidence to support Shoultz's conviction for conspiracy to commit murder. The sentence imposed by the trial court was not inappropriate.

Affirmed.

NAJAM, J., and BROWN, J., concur.